UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA S. TAYLOR,

       Plaintiff,                              Case No. 08-cv-11318

v.                                                  Judge Denise Page Hood

AUTOALLIANCE INTERNATIONAL,
INC.,

       Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

       This matter is before the Court on Defendant AutoAlliance International, Inc.'s ("AAI") Motion for Summary Judgment **[Docket No. 16, filed Feb. 2, 2009]**. On February 23, 2009, Plaintiff filed a Response **[Docket No. 20]**, to which Defendant filed a Reply **[Docket No. 24, filed March 4, 2009]**.

       This matter is also before the Court on Plaintiff's Motion for Partial Summary Judgment **[Docket No. 17, filed Feb. 2, 2009]**. On February 23, 2009, Defendant filed a Response **[Docket No. 21]**, to which the Plaintiff filed a Reply **[Docket No. 23]**. A motion hearing was held on April 17, 2009.

**II.    STATEMENT OF FACTS**

       The instant action arises out of Plaintiff Debra Taylor's allegations that her former employer, Defendant AutoAlliance International, Inc. ("AAI"), discriminated against her in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and

retaliated against her for seeking wage-loss benefits under the Michigan Workers' Disability Compensation Act ("WDCPA"), M.C.L. §§ 418.101 *et seq*.

Ms. Taylor commenced her employment with AAI's predecessor on February 15, 1988. Ms. Taylor was hired as a team member in the paint department, which required her to perform various tasks, including work on an assembly line. In this capacity, Ms. Taylor suffered work-related injuries to her neck and back in 1989, 1992, 1996, and 2000. Ms. Taylor has debilitating neck and back conditions which include: cervical spondylosis, degenerative disc disease, reverse of the normal cervical curve, bulging discs, and bone spurs. As a result of her physical condition, Ms. Taylor was given various work restrictions from 1989 through 2000, which affected her ability to work. For example, in 1996, she was given a permanent restriction of "no overhead lifting with left side greater than 15 pounds, no over shoulder work greater than two hours." [Def.'s Mot. for Summ. J., p. 3].

From 1989 to 2000, it appears that AAI attempted to work with Ms. Taylor's restricted physical status by placing her in different jobs which included performing inspections and the "door-checker" position. On September 26, 2001, AAI informed Ms. Taylor that it could no longer accommodate her restrictions at the plant and placed her on No Work Available ("NWA") status.

Since being placed on NWA status to the present, Ms. Taylor has remained an inactive employee and receives wage-loss and other benefits from AAI. In order to maintain inactive status and receive AAI long-term disability benefits, each employee must submit certain verification documents ("form 5166") every 90 days which certify his or her medical condition and update all workplace restrictions. According to AAI, if the employee's restrictions are

unchanged, the job placement coordinator simply extends the employee's NWA leave. However, if medical restrictions are lessened so that an employee can perform additional jobs at the plant, the job placement coordinator will review vacant positions for possible placement. Since September 2001, Ms. Taylor submitted the required form 5166 all of which demonstrated the same or increased workplace restrictions.

In April of 2002, Ms. Taylor applied for workers' compensation wage benefits. The workers' compensation trial was held on January 20, 2005, and March 22, 2005 before Magistrate Jack Nolish of the Michigan Workers' Compensation Board of Magistrates. On May 27, 2005, Magistrate Nolish found that Ms. Taylor's work-related injuries caused a limitation in her wage earning capacity and that she was entitled to collect workers' compensation benefits until otherwise ordered.[1]

Pursuant to M.C.L. § 418.319, AAI hired an independent vocational rehabilitation consultant, Diane Maruzewski, to assist Ms. Taylor in finding employment to accommodate her physical restrictions. In so doing, Ms. Maruzewski met with Ms. Taylor in August of 2006 and concluded that Ms. Taylor "should be able to complete job applications independently as well as engage in the job search process." [Vocational Assessment Report ("Report"), Def.'s Mot. for Summ. J., Ex. 20, p.5]. In her Report, Ms. Maruzewski also indicated that it was her understanding that there was no work available at AAI which Ms. Taylor could perform. [*Id.*, p.1]. In the same Report, she noted that Ms. Taylor believed that there were jobs she could perform within her restrictions at the plant. [*Id.*, p.4].

---

[1] This order was subsequently affirmed, with modification of Ms. Taylor's weekly wage amount, by the State of Michigan Workers' Compensation Appellate Commission on March 15, 2006.

After receiving the Report, Ms. Taylor requested a vocational rehabilitation hearing with the Michigan Workers' Compensation Agency. As a consequence of these hearings, the Workers' Compensation Agency required Ms. Maruzewski to accompany Ms. Taylor to visit the plant in order to review the jobs that Ms. Taylor believed that she was capable of performing. In accordance with the order, on January 16, 2007, Ms. Maruzewski set up a meeting with Mike Rozack, AAI's risk manager, to determine if there were positions within the paint department that were accommodating to Ms. Taylor's workplace restrictions. Ms. Maruzewski also consulted with AAI's Job Placement Coordinator, Johnny Terrell, and ultimately concluded that there were no positions in the paint department within Ms. Taylor's restrictions. On February 28, 2007, Ms. Taylor accompanied Ms. Maruzewski to meet with both the Job Placement Coordinator and the Risk Manager for a tour of the entire plant. After the second tour, Ms. Maruzewski identified 12 positions that may be within Ms. Taylor's restrictions, however, the AAI representatives indicated that these positions were not available because they required rotations with other jobs outside of her restrictions.

On May 9, 2007, through the aid of counsel, Ms. Taylor compiled a list of 41 positions at AAI that she believes are within her restrictions. However, on June 11, 2007, the Workers' Compensation Mediator held that a vocational rehabilitation plan was reasonable and that Ms. Taylor should try to secure a job outside of the plant.

On July 5, 2007, Ms. Taylor filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). In the charge, Ms. Taylor claims that "Since about 9/01 and most recently 5/30/2007, I have been denied return to work by the head of Risk Management. Every 90 days I am turning in my paper work which states that I am able to work,

4

but I am denied by being told that there is no work available..." [Charge of Discrimination, Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 6]. AAI surmises that the charge of discrimination is actually motivated by the Workers' Compensation Mediator's order requiring Ms. Taylor to comply with the vocational rehabilitation plan to find work outside the plant.

Ms. Taylor believes that there are positions within the plant that are within in her workplace restrictions. Ms. Taylor submits, based on the deposition testimony of Risk Manager Michael Rozek, that she was wrongfully denied an opportunity to work at the plant because of Mr. Rozek's understanding that she was not entitled to any position at the plant because she had successfully litigated her workers' compensation claim. As the risk manager, Mr. Rozek testified that he was responsible for overseeing the Medical Department, security at the plant, as well as workers' compensation and other legal matters. Mr. Rozek also serves as a member of the workers' compensation case management team which makes decisions regarding workers' compensation.

After receiving a right-to-sue letter from the EEOC, Ms. Taylor filed the present two-count lawsuit on March 4, 2008. In its Motion for Summary Judgment, AAI asserts that both Plaintiff's ADA and WDCA claims are without merit. On the other hand, Ms. Taylor argues that she is entitled to summary judgment on the WDCA claim.

**III.    STANDARD OF REVIEW**

Rule 56(c) provides that a summary judgment should be entered only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The presence of factual disputes will preclude granting of summary

judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about material facts is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Summary judgment must be entered against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

IV.   **LAW & ANALYSIS**

   A.   **ADA Claims**

Defendant provides two justifications for the dismissal of Plaintiff's ADA claim: (1) Plaintiff's ADA claim is time-barred; and (2) Plaintiff has failed to establish a prima facie case under the ADA. In reference to the statute of limitations defense, Defendant submits that the claim should be barred because the discrimination charge was not filed with the EEOC within 300 days of the first denial of accommodation. According to the Defendant, the statute of

limitations began to run when the Plaintiff was placed on NWA status on September 21, 2001, based upon her permanent medical restrictions. As such, her time to file a charge expired on July 23, 2002. In response, Plaintiff claims that her ADA claim is timely because the Defendant rejected her request for job placement on February 28, 2007, after the initial plant tour where she identified positions she believed were within her restrictions. Relying on *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002), Plaintiff argues that these subsequent denials to rehire her within the plant qualify as independently discriminatory discrete acts, and are therefore timely.

      The ADA prohibits discrimination by a covered entity "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702-03 (6th Cir. 2008). In order to recover for a violation of the ADA, a plaintiff must first file a timely charge of discrimination with the EEOC. 42 U.S.C. § 12117(a); *Hall v. Scotts*, 211 Fed. Appx. 361, 363 (6th Cir. 2006). A charge of discrimination is timely only if it is filed within 300 days of the challenged action. 42 U.S.C. § 12117(a) (incorporating Title VII procedural requirements into the ADA); 42 U.S.C. § 2000e-5(e)(1); *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003) ("the Title VII administrative charge period is functionally equivalent to a statute of limitations"). In reference to these filing guidelines, the Supreme Court has explained that "[b]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Morgan*, 536 U.S. at 109; *Delaware State College v. Ricks*, 449

U.S. 250, 256-57, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980) ("The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past.").

Determining the timeliness of Plaintiff's EEOC complaint, and this ensuing lawsuit, requires this Court to identify precisely the unlawful employment practice of which she complains. *Delaware State College*, 449 U.S. at 257; *see also Hall*, 211 Fed. Appx. at 363. Where the employee claims that the employer refused to accommodate a disability, the 300-day limitations period runs from the date of the employer's initial denial for a request for accommodation. *Delaware State College*, 449 U.S. at 257-58; Under the instant circumstances, AAI made its initial determination to place Plaintiff on NWA status in September of 2001. The Defendant's subsequent refusal to accommodate Plaintiff despite her personal belief that she could work after the February 28, 2007 plant tour, or after receiving the May 9, 2007 letter, are merely delayed, but intended, consequences of the initial NWA determination. In sum, the only alleged discrimination occurred – and the filing limitations period therefore commenced – at the time the September 2001 NWA decision was communicated to the Plaintiff. *Id.* at 258 ("[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful.")(emphasis added). Accordingly, the time for Plaintiff to have filed a charge expired on July 23, 2002, well-before her July 5, 2007 filing.

Plaintiff's characterization of the February 28, 2007 refusal to reinstate her as a discrete discriminatory act is an attempt to circumvent the appropriate limitations period. The Sixth Circuit has previously found similar arguments insufficient to allow recovery for acts that

occurred outside the filing period. For example, in *Hall*, the Sixth Circuit affirmed the lower court's determination that plaintiff's ADA claim was time barred. 211 Fed. Appx. at 363. The *Hall* plaintiff unsuccessfully sought an accommodation for his breathing condition so that he could continue working as a forklift driver. *Id.* at 362. Prior to filing a charge with the EEOC, the plaintiff petitioned his employer to make certain accommodations that would allow him to return to work. *Id.* The plaintiff even proposed purchasing certain equipment that would remedy his breathing disorder, and potentially allow him to return to his previous position. *Id.* The employer declined his requests due to safety concerns. *Id.* In an attempt to overcome the limitations period, the plaintiff argued, relying on *Morgan*, that the "parties were engaged in an 'interactive process' to accommodate his disability ... which did not culminate until [the rejection of his second request for an accommodation]." *Id.* at 363. In rejecting this argument, the Sixth Circuit noted:

> [The employer's] reiteration of its earlier denial was, at most, "merely a consequence of its [earlier] discriminatory act," and not as [plaintiff] contends, the culmination of an interactive process to accommodate his disability. "[A]llowing [the plaintiff] to restart the statute of limitations by sending a letter requesting reasonable accommodations after she has been unequivocally fired would destroy the statute of limitations." ... "To permit [an employee] to reset the statutory requirements for the timely filing of a complaint merely by writing a new letter to his former employer would clearly vitiate the intent behind the 300-day time limit."

*Id.* (internal citations omitted). Likewise, this Court finds that Defendant's subsequent denial to accommodate the Plaintiff after the February 28, 2007 denial amounted to nothing more than a reiteration of its earlier denial.

Even assuming that Plaintiff's claim was timely, she is unable to establish a prima facie case of disability discrimination. To prevail in a disability discrimination case based on a failure

9

to accommodate claim, a plaintiff must show: "(1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Myers v. Cuyahoga County, Ohio*, 182 Fed. Appx. 510, 515 (6th Cir. 2006); *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996); *Smith v. Ameritech*, 129 F.3d 857, 866-68 (6th Cir. 1997). In circumstances like the present, where Plaintiff attempts to meet this burden by presenting inferential evidence of discrimination, this Court must apply the familiar *McDonnell Douglas* burden-shifting framework. *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008). After the plaintiff establishes a prima facie case of discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If the defendant does, the burden again falls to the plaintiff who must "identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.* While these burdens of production shift, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 553-54 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). This analysis, prompted by a motion for summary judgment, requires the Court to consider whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnel Douglas* inquiry. *Nance*, 527 F.3d at 554.

Of the above listed elements of a prima facie case, Defendant generally disputes all except the claim that Plaintiff is disabled. Accepting, for the purposes of summary judgment,

that Plaintiff has established her disability and made a reasonable request for accommodation through the submission of her 2007 list of jobs, the remaining contested element, based upon the parties' arguments is: whether Plaintiff is otherwise qualified, with or without accommodation. In arguing that Plaintiff is not "otherwise qualified," Defendant submits two lines of reasoning: (1) Plaintiff's medical condition and physician-imposed restrictions foreclose her from performing all of the available jobs; (2) the doctrine of judicial estoppel bars plaintiff from establishing she is otherwise qualified. In opposition, Plaintiff argues that sufficient evidence exists to demonstrate that she is "otherwise qualified" and that the doctrine of judicial estoppel is inapplicable. Finding that the Plaintiff's physician-imposed restrictions precluded further employment at the Defendant's plant, the Court declines to examine whether the Plaintiff's claim would be barred by the doctrine of judicial estoppel.

In order to be "otherwise qualified for the job," the employee must demonstrate that he can handle "the essential functions of the job, with or without accommodation." 42 U.S.C. § 12111(8); *Denczak v. Ford Motor Co.*, 215 Fed. Appx. 442, 444 (6th Cir. 2007) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 456 (6th Cir. 2004)). When ascertaining these "essential functions," courts are counseled to consider "written job description[s]" and the "employer's judgment." *Denczak*, 215 Fed. Appx. at 444 (citing 42 U.S.C. § 12111(8)). While the "disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable," it falls on the employer to demonstrate that the "proposed accommodation would impose an undue hardship." *Smith*, 129 F.3d at 866.

Viewing the evidence in a light most favorable to the Plaintiff, the Court is persuaded that the record inevitably demonstrates Plaintiff is unable to establish that she can perform the

11

essential functions of the jobs she seeks, and therefore is unable to establish a prima facie case of discrimination. To begin, it is uncontested that Plaintiff suffers from chronic neck and back disorders including cervical spondylosis, which have only degenerated as most clearly evidenced by her increasingly limited working restrictions. Plaintiff's physician, Dr. Guyon, extensively testified to the Plaintiff's physical limitations:

> I would put her on definitely no overhead work, no repetitive work, no lifting over 10, 15 pounds, no reaching with her arms forward of her body and manipulating things with the hands, especially the left arm and hand ... I wouldn't put her in body positions where she has to hyperextend or twist her neck or trunk or back or pelvis in doing her job. And this job that she did in the trunk of the car, fastening grommets all that stuff...

[Aug. 5, 2003 Cross Examination of Mary Ann Guyon M.D., Def.'s Mot. for Summ. J., Ex. 16, p. 15]. When specifically asked whether the Plaintiff was capable of working on an assembly line job after September of 2001, Dr. Guyon responded "Absolutely not." [*Id.*, p. 16]. These restrictions alone precluded Plaintiff from returning to her previous position, as well as other available factory jobs. According to Dr. Guyon, Plaintiff "could work with a sit-down non repetitive job." [Dec. 16, 2008 Deposition of Mary Ann Guyon M.D., Def.'s Mot. for Summ. J., p. 71]. Plaintiff herself, through filings to the Social Security Administration, further corroborates her difficulty: standing, sitting, working overhead, lifting, using the computer, doing laundry, getting in and out of the car, and holding the phone. [Summary of Plaintiff's Complaints about Physical Activities, Def.'s Mot. for Summ. J., Ex. 33 (citing SSA filings, Claimant Submissions)]. These restrictions, many of which are permanent, prove fatal to Plaintiff's prima facie case as she is unable to demonstrate that she is otherwise qualified.

In opposition, Plaintiff asserts that while the aforementioned restrictions are accurate, they do not "preclude all work in the plant." [Pl.'s Resp. to Def.'s Mot. for Summ. J., p. 13].

Based upon the record this position proves to be untenable, even when viewing the facts in a light most favorable to Plaintiff. Plaintiff relies on (1) her personal belief that she is capable of performing certain jobs; and (2) deposition testimony of Dr. Guyon which indicates that Plaintiff could probably do a job "where she would drive a car off the assembly line and then have to walk maybe 15 minutes an hour back to where she was." [Dec. 16, 2008 Deposition of Mary Ann Guyon, M.D., Pl's Resp. To Def.'s Mot. for Summ. J., Ex. 8, 97-98]. Upon closer examination neither reason arises to a triable question of material fact, nor do they support an inference that Plaintiff was otherwise qualified. As to Plaintiff's personal belief, her previous testimony, work place restrictions, and the treating physician's orders demonstrate that she is incapable of performing the essential functions of the positions she seeks to fill, and at a minium raise an eyebrow as to her "personal belief." *Scott v. Harris*, 550 U.S. 372, 379-80, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.") Specifically, Plaintiff names four jobs she can allegedly perform: two driving jobs, door checker, and inspection. However, Dr. Guyon's aforementioned restrictions render Plaintiff incapable of performing these jobs. *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003) ("the employee's belief or opinion that she can do the function is simply irrelevant. The ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden."). According to the affidavit of Mark Asmus, an industrial engineer familiar with each of the named positions, both of the driving positions are fast-paced and require repetitive closing of a vehicle door from the inside, driving on rough-road track,

performing quick starts and stops of the vehicle, and walking between the point of drop-off and next vehicle entry. [Declaration of Mark Asmus, Def.'s Reply to Pl.'s Resp., Ex. 2]. As such, these positions violate Plaintiff's work place restrictions as ordered by her treating physician. The other two positions asserted by Plaintiff, door checker and the inspection position, are both assembly-line positions, and as such are also precluded by previous work place restrictions. In sum, Plaintiff's personal belief is insufficient to create a question of material fact when severely undermined by her own previous statements, medical documentation, and work place restrictions. *See Koshinski v. Decatur Foundry, Inc.*, 177 F.3d 599, 602-03 (7th Cir. 1999)("[Plaintiff] may have shown that he wanted to return to work despite the risk of pain and harm, but that is not the test. He had to show that he was qualified to do the job. And neither he nor his doctors thought he was.")

      Plaintiff's second contention, that Dr. Guyon would permit her to try certain driving jobs, is equally insufficient to stave off summary judgment. The deposition testimony itself demonstrates that Dr. Guyon is unsure if Plaintiff could truly handle the driving position, "I would like her to try it before she does it as a steady job to see if she is able to do that." [Deposition of Mary Ann Guyon, M.D., Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex 8, p. 98]. Nor does the ADA require Defendant to offer a "try and see" accommodation to determine if the employee is otherwise qualified. *Peters v. City of Mauston*, 311 F.3d 835, 846 (7th Cir. 2002) ("Allowing the employee to return to work to see if he can complete the job is the wrong test as to whether an accommodation is reasonable. The employer is not obligated to allow the employee to try the job out in order to determine whether some yet-to-be requested accommodation may be needed.") (internal citation omitted).

Because Plaintiff has failed to timely initiate her claim, and because she is unable to demonstrate that she could perform the essential functions of her desired positions, the Court concludes that Defendant is entitled to summary judgment on the Plaintiff's ADA claim.

**B.      Workers' Compensation Act Claims**

As to Count II, both Plaintiff and Defendant have filed cross motions for summary judgment. According to Plaintiff, she is entitled to judgment as a matter of law on her WDCA claim because the deposition testimony of Risk Manager Michael Rozek conclusively establishes direct evidence of workers' compensation discrimination in violation of M.C.L. § 418.301(11). However, in its Response and Motion for Summary Judgment, Defendant provides that Plaintiff's workers' compensation retaliation claim should be dismissed as a matter of law because (1) Plaintiff is unable to establish a prima facie case; and (2) the claim is time-barred.

The WDCA provides that "an employee who receives a personal injury arising out of and in the course of employment with a covered employer shall be paid specified wage loss benefits and medical services and is entitled to medical rehabilitation services." *Harper v. Auto Alliance Intern, Inc.*, 392 F.3d 195, 203 (6th Cir. 2004) (citing M.C.L. §§ 418.301(1), 418.315(1), 418.319). The WDCA establishes a remedial scheme for employees to make a workers' compensation claim and resolve disputes over benefits through a summary administrative procedure. *Harper*, 392 F.3d at 203 (citing §§ 418.381-385, 418.801, 418.841, 418.853). However, it is Section 418.301(11) which gives life to Plaintiff's WDCA retaliation claim, and governs the instant dispute:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

15

M.C.L. § 418.301(11).  It is Plaintiff's position that Defendant violated this provision by refusing to consider her for placement at the plant because she had won an open award in her workers' compensation case.

In order to establish a prima facie case of retaliatory discharge under the WDCA, a plaintiff must demonstrate that: (1) she asserted her right to workers' compensation benefits; (2) the defendant knew that plaintiff asserted her rights to workers' compensation benefits; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the plaintiff's assertion of her right to workers' compensation benefits and the adverse employment action.  *Chiles v. Machine Shop, Inc.*, 238 Mich. App. 462, 470, 606 N.W.2d 398 (Mich. Ct. App. 1999); *Dortman v. ACO Hardware, Inc.*, 405 F. Supp.2d 812, 822 (E.D. Mich. 2005).  Plaintiff bears the burden of showing a causal connection between the protected activity of filing a workers' compensation claim and the adverse employment action.  *Chiles*, 238 Mich. App. at 470.  Similar to the analysis above, employees that rely on circumstantial evidence are required to proceed under the burden-shifting approach articulated in *McDonnell Douglas Corp*.

In the case at bar, Plaintiff's WDCA claim cannot survive summary judgment because it is both untimely and fails to establish a prima facie case.  A timely workers' compensation retaliation claim must be filed within three (3) years of the alleged retaliation.  M.C.L. § 600.5805(10). According to Plaintiff, Defendant retaliated against her by refusing to let her work.  Yet, as noted in the previous analysis, Defendant's initial NWA determination was in September of 2001.  This allegedly retaliatory act occurred six months before Plaintiff filed her workers' compensation claim, and almost four years before she began receiving benefits under the WDCA.  Plaintiff did not file the instant suit until March 4, 2008, well-beyond the three year

16

limitations period for bringing a claim based on the NWA status.

Even if the Court were to treat Plainitff's claim as timely, she still fails to make a prima facie showing of retaliation under the WDCA. Significantly, Plaintiff is unable to demonstrate that Defendant took any adverse action against her after she asserted her rights under the WDCA. As demonstrated above, Plaintiff's medical restrictions precluded her from working at the plant, militating against any retaliatory motive. Yet what is most fatal to Plaintiff's WDCA claim is the absence of any type of adverse employment action, let alone one based on Plaintiff's exercise of her rights under the WDCA. All claims of retaliation require the plaintiff to demonstrate that the employer took a "materially adverse" action in response to the assertion of a right under the WDCA. Such "materially adverse" action includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or indices that might be unique to a particular situation." *Wilcoxon v. 3M*, 235 Mich. App. 347, 363, 597 N.W.2d 250 (Mich. Ct. App. 1999). Here, Plaintiff is unable to establish that any such materially adverse action occurred. According to Plaintiff, the refusal to consider her for employment after touring the plant and identifying jobs constituted adverse employment action. Buttressing this assertion, Plaintiff relies exclusively on the deposition testimony of Risk Manager Michael Rozek, wherein he indicated that her open-award was the reason he did not have to accommodate her request to return to work. However, the decision to place Plaintiff on NWA status occurred in 2001well before the 2007 plant tours, or Rozek's refusal to consider Plaintiff. In sum, there has been no adverse employment action since 2001, as Plaintiff retains the identical NWA status that she had since 2001. As such, no term or condition of Plaintiff's employment has changed; in fact, she is

in the same financial position after the event that triggered the alleged retaliation. Consequently, Plaintiff's WDCA claim fails as a matter of law.

V.     **CONCLUSION**

In light of the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **[Docket No. 16, filed Feb. 2, 2009]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment **[Docket No. 17, filed Feb. 2, 2009]** is **DENIED**.


                                             S/Denise Page Hood
                                             Denise Page Hood
                                             United States District Judge

Dated:  August 24, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 24, 2009, by electronic and/or ordinary mail.

                                             S/William F. Lewis
                                             Case Manager

18